

Bobby Ghajar
+1 310 883 6404
bghajar@cooley.com

**VIA ECF**

June 9, 2017

Judge P. Kevin Castel
United States Courthouse
500 Pearl St.
Courtroom 11D
New York, NY 10007-1312

**Re:** *Spuds Ventures, LLC v. Anheuser-Busch InBev Worldwide, Inc., Anheuser-Busch, LLC, Anheuser-Busch Companies, LLC and Wieden + Kennedy, Inc.*
Case No. 1:17-cv-01877-PKC

Dear Judge Castel:

This firm represents Defendants Anheuser-Busch InBev Worldwide, Inc., Anheuser-Busch, LLC, and Anheuser-Busch Companies, LLC (collectively, "A-B") in the above matter. As explained below, and pursuant to the Court's Individual Practices (Paragraph 4), A-B seeks leave to file a Motion to Dismiss Plaintiff's Amended Complaint [Dkt. 9]. Defendant A-B intends to file such motion in lieu of an Answer. An Initial Conference is scheduled for June 28, 2017 [Dkt. 28].

**Basis for Motion to Dismiss:**

Plaintiff's Complaint alleges that A-B's reference to its iconic character "Spuds MacKenzie" in a recent Super Bowl commercial for beer infringes Plaintiff's purported rights in the trademark SPUDS MACKENZIE for pet products. The Complaint fails on the face of its allegations for three reasons.

First, television commercial characters speaking the name "Spuds MacKenzie" to refer to A-B's well-known character appearing in that commercial is a non-actionable fair use.

Second, under the *Rogers v. Grimaldi* test, reference to the "Spuds MacKenzie" character in the commercial is protected by the First Amendment.

Third, Plaintiff has failed to allege the required element of likely confusion, because it is not plausible that a consumer viewing A-B's beer commercial featuring its iconic mascot could be confused into believing that the commercial or product advertised was in any way associated with Plaintiff and/or Plaintiff's pet sanitizing and related products.



Judge Castel
June 9, 2017
Page Two

## Background:

### *Anheuser-Busch's Spuds MacKenzie Character*

"Spuds MacKenzie" is an iconic A-B character who debuted in a television commercial first aired during the 1987 Super Bowl. Portrayed by a bull terrier dog characterized by a misshaped eye patch, he was billed as the "original party animal." The Spuds MacKenzie character subsequently appeared in many commercials over the following years and rose to be a part of popular culture. Spuds MacKenzie is arguably one of the most recognized television commercial characters of all time. Although the character was on hiatus by the 1990s, memorabilia and collateral items bearing the Spuds MacKenzie name and likeness have remained popular on the secondary market until today. The original commercials featuring Spuds MacKenzie are still available online, and A-B owns all rights in the character and the related commercials and works in which he is featured (including 69 federally registered copyrights, of which the Court can take judicial notice). More recently, A-B, with its advertising agency co-defendant Wieden + Kennedy ("W+K"), created a new television commercial featuring the Spuds MacKenzie character that aired during this year's Super Bowl LI.

### *Plaintiff "Spuds Ventures" and This Lawsuit*

Plaintiff's owner, Mark Thomann, regards himself as an entrepreneur who co-opts famous brands that, in his opinion, have been "abandoned" by companies that no longer exist or are otherwise defunct. Dkt. 9 at ¶35. His strategy appears to be to pursue brands that continue to have residual goodwill and consumer recognition and to leverage business opportunities using those brands. For example, he is in litigation for attempting to register as his own the CINGULAR WIRELESS name and *identical* logo: .

In the Complaint, Plaintiff alleges that it owns rights to the trademark SPUDS MACKENZIE by way of a registration covering "deodorizing preparations for pet litter boxes; dietary pet supplements in the form of pet treats; dietary supplements for pets; dietary supplements for pets in the nature of a powdered drink mix; feed supplements for pets; medicated grooming preparations for pets, namely, shampoos and cleaning supplies in the nature of ear cleaners; sore skin ointment for pets; vitamins for pets." Dkt. 9, at ¶¶58-67. Plaintiff also alleges that it owns rights to SPUDS MACKENZIE in connection with clothing, pet food, and bar and restaurant services.[1] *Id.* at ¶¶68-82. Based on those alleged rights, Plaintiff brings this trademark infringement and unfair competition action against A-B and W+K contending the use of the Spuds MacKenzie character name infringes Plaintiff's rights. Plaintiff seeks various remedies, including an injunction, disgorgement of A-B's profits, and attorneys' fees.

---

[1] As A-B will explain by reference to the records of the United States Patent and Trademark Office (USPTO), Plaintiff filed applications for SPUDS MACKENZIE or prepared to use the mark in connection with the referenced products ***after*** A-B's Super Bowl commercial was made public.



Judge Castel
June 9, 2017
Page Three

*The Commercial*

At issue is a one-minute and thirty-second commercial, which is a take-off on Charles Dickens' *A Christmas Carol* and centers on the importance of friendship. The Spuds MacKenzie character appears as a "ghost" who surprises the male protagonist "Brian" and convinces him to spend time with friends instead of spending the night at home by himself.[2] The Spuds character proclaims that his "soul can't rest when people don't drink Bud Light® with friends." Spuds takes Brian on *A Christmas Carol*-type journey, showing him scenes of his friends at various social events where he is not in attendance.

At the first stop, which reflects on a past event, Brian's friends are laughing as they share an "inside joke" that Brian will never understand, because he was not there. At the second stop, which took place "a few days ago," the friends struggle to answer a question at a bar trivia night; Brian knows the answer to the question but is powerless to have his voice heard. Spuds reminds Brian that his friends needed him, and he was not there. Finally, journeying to the present ("tonight"), Spuds takes Brian to his friends' house, where he sees all of his friends together. Spuds sends the man into the house to join his friends with a case of Bud Light® beer and some words of advice.

Plaintiff's trademark claims are focused on this commercial, and in particular, two mentions of the character name "Spuds MacKenzie," within that commercial. Dkt. 9 at ¶¶95-96 (focusing on two mentions of the "term 'Spuds MacKenzie'").

**Summary of Intended Motion:**

The Complaint fails for multiple reasons, but A-B's motion will focus on three grounds.

*First*, Plaintiff's trademark claim fails because A-B's use of the "Spuds MacKenzie" name to refer to the character it created and owns does not serve a "trademark" (i.*e.* source identifier) function in the commercial. It is thus a non-actionable fair use.

The fair use defense protects a defendant's right to use words that comprise a plaintiff's mark when the use is other than as a trademark. "Section 33(b)(4) of the Lanham Act provides an affirmative defense to an infringement claim where the use of the mark 'is a use, otherwise than as a mark, ... which is descriptive of and used fairly and in good faith only to describe the goods ... of such party[.]'…If it cannot be proven that the unauthorized use serves to identify the source of the defendant's product, such use is not protectable as a trademark." *Naked Cowboy v. CBS*, 844 F. Supp. 2d 510, 515 (S.D.N.Y. 2012) (quoting 15 U.S.C. § 1115(b)(4)). Because A-B's use of the name "Spuds MacKenzie" is "otherwise than as a mark," it is a protected fair use.

---

[2] That advertisement, which would be made of record for the purposes of A-B's Motion, is viewable in its entirety at https://www.youtube.com/watch?v=aYeXldMEpV8. The Court may view the commercial and consider it in deciding Defendants' motion to dismiss, as it is referenced in the Complaint (Dkt. 9 at ¶¶97-98) and integral to Plaintiff's claims. *See, e.g., Louis Vuitton Malletier S.A. v. Warner Bros. Entm't Inc.*, 868 F. Supp. 2d 172, 176 (S.D.N.Y. 2012) (considering film that allegedly infringed plaintiff's mark on motion to dismiss).

Courts have specifically recognized that when there are no other words to describe a character other than by its name, "[i]t is extremely unlikely that a prospective consumer would understand those words as identifying the source of the goods rather than merely naming the character." Thus, a defendant has a fair use right to call a character by name – trumping any asserted trademark rights the plaintiff may claim. *See Fleischer Studios, Inc. v. A.V.E.L.A., Inc.*, 925 F. Supp. 2d 1067, 1069 (C.D. Cal. 2012). In *Fleischer*, the court held that use of the "Betty Boop" name on goods bearing the Betty Boop character did not infringe Plaintiff's rights in the BETTY BOOP trademark, because there was no other way for the defendant to identify the character, other than by name. A-B's use of the "Spuds MacKenzie" name is similarly not actionable as "trademark infringement," as it necessarily was used *specifically* to identify the Spuds MacKenzie character. Even if A-B had not created this character (like the defendant in *Fleischer*), it would still have a right to refer to the character by name in a commercial. A-B's defense is even stronger here because it did create Spuds MacKenzie and owns all rights to the character. Accordingly, A-B's use of the name "Spuds MacKenzie" to refer to the A-B-created character that appears in the commercial constitutes fair use. Indeed, it would be incongruous with a copyright owner's right to exploit its expressive work if, years after a character is commercially released, an interloper could claim "trademark rights" in that character's name and thereby prevent the character's owner from referring to its character by name -- and effectively preclude or inhibit exploitation of the rights in that character.

*Second*, Plaintiff's trademark claim fails because the First Amendment protects A-B's use of the "Spuds MacKenzie" name in A-B's commercial. Under the *Rogers v. Grimaldi* test, use of a trademark in an artistic work that otherwise may violate the Lanham Act is not actionable "unless the [use of the mark] has no artistic relevance to the underlying work whatsoever, or, if it has some artistic relevance, unless [it] explicitly misleads as to the source or the content of the work." *Rogers v. Grimaldi*, 875 F.2d 994, 999 (2d Cir. 1989).

In the commercial at issue[3], the "Spuds MacKenzie" character's name is spoken aloud *twice* - and both mentions refer to the character – there is no other accused use. Dkt. 9 at ¶¶95-96. The name is thus used solely for the artistic purpose of telling a story in the commercial (*e.g.*, the importance of spending time with friends, as explained by a character who had learned that life was not all about being a "party animal"), and does not "explicitly mislead as to the source or content" of the video. Not only is the use of the name "Spuds MacKenzie" artistically relevant, it was artistically *necessary*. It would not have been feasible to tell the story without referring to the character by name, nor should A-B or other creators of artistic works be deprived of the ability and right to refer to a character by name. The public interest in allowing such artistic expression far outweighs any interest in protecting whatever rights Plaintiff alleges to have established in the SPUDS MACKENZIE mark.

---

[3] The Complaint at ¶¶95-96 (Fig. 2-3) depicts two screenshots with text captions that were *not* in the commercial as broadcast, or in the YouTube video referenced above.

***Finally***, Plaintiff's trademark claims fail because Plaintiff has not alleged plausible facts that support a finding of a likelihood of confusion. It is well established that there can be no trademark infringement without likely consumer confusion. *1-800 Contacts, Inc. v. WhenU.Com, Inc.,* 414 F.3d 400, 406-07 (2d Cir.2005) (quoting 15 U.S.C. § 1114(1)(a)) ("the plaintiff must show that defendant's use of that mark `is likely to cause confusion ... as to the affiliation, connection, or association of [defendant] with [plaintiff], or as to the origin, sponsorship, or approval of [the defendant's] goods, services, or commercial activities by [plaintiff]."). Moreover, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Here, Plaintiff's claims for trademark infringement fail as a matter of law because Plaintiff has not alleged that a single consumer has actually been confused, nor has Plaintiff plausibly alleged that any consumer who viewed A-B's Super Bowl commercial featuring the ghost of Spuds MacKenzie would be likely to be confused that A-B's beer products originate with or are sponsored by, or are otherwise in any way associated with, Plaintiff based on Plaintiff's alleged rights in the SPUDS MACKENZIE mark for pet products.[4]

Significantly, as noted above, the Super Bowl commercial makes abundantly clear that the reference to Spuds MacKenzie is to draw upon an association with A-B's iconic, copyrighted character and his persona. It is entirely implausible that consumers would construe it as a reference to the purported trademark or goods of another entity.

Although Plaintiff claims that its trademark rights extend beyond pet products, these contentions fail. Plaintiff's actual rights (if any) are far narrower than Plaintiff has alleged in its Complaint. The Complaint refers to certain pending trademark applications for SPUDS MACKENZIE in connection with clothing, pet toys, and pet food. Dkt. 1 at ¶¶75-81. As Plaintiff acknowledges, it filed these three applications in **March 2017** – *after* A-B released the Super Bowl commercial at issue. Further, according to the USPTO records, Plaintiff's alleged date of first use in connection with clothing is February 4, 2017 – two days *after* A-B announced and released the commercial on YouTube. Similarly, according to Plaintiff's own Twitter account, it allegedly launched a "Spuds MacKenzie Bar & Grill" on February 5, 2017 (see https://twitter.com/spudsMacKenz) – which also post-dates A-B's commercial. Plaintiff cannot

---

[4] Plaintiff purports to allege "reverse confusion" (Dkt. 9 at ¶104), a theory which protects the owner of an earlier but less prominent trademark from being diluted by the later adoption of the same mark by a larger entity with the resources to create a widespread reputation in the mark, and thus prevent the earlier user from gaining its own reputation under the mark. Applying that theory here would turn the law on its head since Plaintiff co-opted A-B's SPUDS MACKENZIE character name to draw upon the goodwill and fame of that character that A-B had developed over years.



predicate its infringement claims on alleged trademark rights that are invalid[5] or which post-date the accused commercial.  *See e.g., Silberstein v. Fox Entm't Grp., Inc.*, 424 F. Supp. 2d 616, 632 (S.D.N.Y. 2004), *aff'd sub nom. Silberstein v. John Does 1-10*, 242 F. App'x 720 (2d Cir. 2007).

These flaws in Plaintiff's allegations are fatal to Plaintiff's claims as a matter of law, and no amendment by Plaintiff could, or would, cure these defects.

For the foregoing reasons, in accordance with Your Honor's Individual Practices and Rules, A-B respectfully requests leave to file a Motion to Dismiss the Amended Complaint.  A-B requests two (2) weeks from the date of any order allowing such a motion to file the motion, and would then follow the briefing schedule set forth in Civil Local Rule 6.1(b).  A-B would also request oral argument to the extent the Court has questions or seeks clarification on any of these issues.

We thank the Court for its attention to the matter.

Sincerely,

Bobby Ghajar

146512353

---

[5] Separately, at the appropriate time, A-B would challenge and prove that each of Plaintiff's trademark applications and its registration are invalid on various grounds, including Plaintiff's conduct before the USPTO, and its attempt to claim "trademark" rights in SPUDS MACKENZIE by using that name along with a cartoonish picture of a dog that is a *copy* of A-B's Spuds MacKenzie character – which infringes A-B's pre-existing copyright in the Spuds MacKenzie character and name.