

Tel: (212) 235-1220
Fax: (888) 697-9665
E-Mail: Joseph.Gioconda@GiocondaLaw.com
Website: www.TrademarkLawyer.nyc

Re: *Spuds Ventures LLC v. Anheuser-Busch InBev Worldwide, Inc., et al.*, 1:17-cv-1877-PKC (SDNY)

13 June 2017

**By Electronic Filing**

Honorable P. Kevin Castel
United States District Court Judge
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

Your Honor:

This firm represents the Plaintiff Spuds Ventures LLC ("Spuds Ventures") in the above-captioned trademark infringement and unfair competition case, pending before the Court. This letter responds to the pre-motion letter dated June 9, 2017 from Defendants Anheuser-Busch InBev Worldwide, Inc.'s, Anheuser-Busch LLC's and Anheuser-Busch Companies LLC's (collectively, "A-B's") counsel [Dkt. 29] (hereinafter, "A-B's Letter") regarding Spuds Ventures' allegations in the Amended Complaint [Dkt. 9] (hereinafter, the "AC"). Defendant Wieden & Kennedy, Inc. ("W+K") has apparently joined A-B's Letter on June 12, 2017, but did not elaborate further [Dkt. 32].

## RELEVANT FACTUAL BACKGROUND

### Spuds Ventures LLC

Spuds Ventures owns a federal trademark registration for the words "SPUDS MACKENZIE" in Class 5. AC at ¶¶ 58-67, Exh. 17. When published for opposition by the U.S. Patent and Trademark Office ("PTO") in April 2014, A-B did not oppose Spuds Ventures' trademark application, nor has it sought to cancel Spuds Ventures' registration at any time, despite declaring its purported "invalidity" in a footnote in A-B's Letter.

Spuds Ventures' federally registered trademark is entitled to a legal presumption of validity, and to a presumption that Spuds Ventures has the exclusive right to use and control how its trademark is used in commerce. *See Christian Louboutin S.A. v. Yves St. Laurent America Holdings, Inc.*, 696 F.3d 206, 223 (2d Cir. 2012) ("[a] certificate of registration with the PTO is *prima facie* evidence that the mark is registered and valid (i.e., protect[a]ble), that the registrant owns the mark, and that the registrant has the exclusive right to use the mark in commerce.").

100 Park Avenue
16th Floor
New York NY 10017
Tel: (212) 235-1220

One Liberty Place, Suite 3600
Philadelphia, PA 19103
1350 Market Street
Tel: (215) 944-8585

301 South State Street
Suite 102S
Newtown PA 18940
Tel: (215) 944-8530

There is no other person or entity that owns any federal trademark registrations for SPUDS MACKENZIE. Spuds Ventures has successfully protected its SPUDS MACKENZIE trademark by, *inter alia*, opposing a third party's application for a trademark claiming that same term in the PTO.[1] In addition to its website on *www.SpudsMacKenzie.com*, Spuds Ventures has openly used the term "SPUDS MACKENZIE" in *bona fide* interstate commerce in connection with pubs and restaurants, and Spuds Ventures also owns pending trademark applications in the PTO for that term in Classes 25, 31 and 43.[2] AC at ¶¶ 68-82.

### W+K

W+K is the advertising agency that created the Infringing Press Release and Infringing Television Commercial. AC at ¶ 8. Courts have long held that in trademark infringement cases, "any member of the distribution chain can be sued as an alleged joint tortfeasor." *Make Up Forever, S.A. v. SOHO Forever, LLC,* 198 F.R.D. 56, 59-61 (S.D.N.Y. 2000). Since joint tortfeasors are jointly and severally liable, "the victim of trademark infringement may sue as many or as few of the alleged wrongdoers as he chooses." *See* 3A MOORE'S FEDERAL PRACTICE P 19.14 (2–4) (2d ed. 1979); *see also Tiffany (NJ) Inc. v. eBay, Inc.*, 600 F.3d 93, 103-110 (2d Cir. 2010) (discussing standards for contributory and vicarious trademark infringement liability).

It is clear that advertising agencies that participate in the creation of an infringing advertisement can be held jointly liable as joint tortfeasors for trademark infringement resulting from such advertisements. *See Burck v. Mars*, 571 F. Supp.2d 446, 455 (S.D.N.Y. 2008) (denying defendants' motion to dismiss Lanham Act claims including trademark infringement claims against advertising agency Chute Gerdeman for creating Mars' "naked cowboy" M&M ads).

### Anheuser-Busch

*1. Defendants' Infringing Press Release*

A-B's Letter offers no discussion of the Defendants' Infringing Press Release dated June 2, 2017, but discusses only the Infringing Television Commercial. However, as the AC alleges in detail, the Infringing Press Release constitutes an independent basis for liability: "[t]o solicit media coverage, to gain a broader audience for its infringing television commercial advertisements and to promote and advertise their Bud Light® beer, the Anheuser-Busch Defendants issued a widely-disseminated press release, saying that they were 're-introducing . . . Spuds MacKenzie" as part of their wider Bud Light® advertising campaign.'" See February 2, 2017 Press Release attached as Exh. 18 to AC (emphasis added) (the "Infringing Press Release"). AC at ¶¶ 85-89; *see also World Wrestling Federation Entertainment, Inc. v. Bozell*, 142 F.Supp.2d 514, 528-529 (S.D.N.Y. 2001) (motion to dismiss Lanham Act claims against accused press release denied because Internet-distributed press releases affect interstate commerce and reach consumers).

Specifically, Defendants announced in their written Infringing Press Release: "[a]lthough Spuds will be shedding his former persona, his message of lasting friendships is one that intends to resonate across generations, and integrate with Bud Light's broader 'Famous Among Friends' brand campaign,' said AB InBev." Exh. 18 to AC.

---

[1] PTO Opposition No. 91233432.

[2] A-B has recently sought an extension of time to Oppose Spuds Ventures' pending trademark applications, but has not articulated its legal basis to do so to the Trademark Trial and Appeal Board.

The AC alleges that the Infringing Press Release garnered significant media attention, with numerous media outlets quoting verbatim from it. *See, e.g.*, FORTUNE, Feb. 2, 2017. This infringing Press Release created additional media "buzz," and was intentionally designed by the Defendants to create broader visibility of the infringing advertising, to increase their sales of Bud Light® beer among consumers. AC at ¶ 87.

2. *Defendants' Infringing Television Commercial*[3]

The AC alleges: "[t]o promote and to sell their alcoholic Bud Light® beer, as part of their wider 'Famous Among Friends' advertising campaign, the Anheuser-Busch Defendants invested millions of dollars to create and to broadcast a ninety-second television commercial called 'The Big Game,' which was created by New York-based employees of W+K, an advertising agency.[4] The Defendants' unauthorized use of the Plaintiff's Trademarks in connection with a dog was broadcast during the February 5, 2017 Super Bowl LI (51) to promote the Anheuser-Busch Defendants' Bud Light® beer products to over 111 million viewers worldwide." AC at ¶¶ 90-91.

In addition to paying the Fox television network millions of dollars to broadcast the Infringing Television Commercial, the Defendants also intentionally posted it in its entirety to YouTube® where it has received over thirteen million (13,000,000) views, and continues to receive additional views to the present day. AC at ¶¶ 97-99. A-B also posted the Infringing Television Commercial to the *http://www.BudLight.com* website, where it continues to attract customers and to increase their sales of Bud Light® beer. Id. The Infringing Television Commercial is also posted to W+K's website.

## LEGAL DISCUSSION

Having not served answers or pleaded any affirmative defenses, A-B and W+K apparently intend to move to have all claims asserted against each of them in the AC dismissed under FED.R.CIV.P. 12(b)(6) for the AC's purported failure to state a claim for relief. See A-B's Letter. However, the detailed AC and its documentary exhibits amply plead a plausible case for trademark infringement and unfair competition against both A-B and W+K under federal and New York state law, based on the Infringing Television Commercial and the Infringing Press Release.[5]

Citing only District Court cases from 2012 and before on this point, A-B's Letter seems to argue that Defendants are wholly immune from judicial scrutiny under the Lanham Act because "A-B's use of the 'Spuds MacKenzie' name to refer to the character it created and owns ***does not serve a 'trademark' (i.e. source identifier) function in the commercial***." A-B's Letter at 3 (emphasis added).

---

[3] Spuds Ventures agrees with A-B's counsel that the Infringing Television Commercial is incorporated by reference by the AC and encourages the Court to view it.

[4] A-B's letter appears to take issue with closed captioning subtitles appearing in its own commercial, claiming that such text did not actually appear in the Infringing Television Commercial.

[5] Spuds Ventures has no intention or need to further amend the AC to address A-B's anticipated Motion to Dismiss under Rule 12, but Spuds Ventures respectfully reserves its right to further amend the AC to add additional parties in place of the John Doe defendants currently named.

But this exact same legal argument was flatly rejected by the United States Court of Appeals for the Second Circuit in 2013 in *Kelley-Brown v. Winfrey*, 717 F.3d 295, 307-308 (2d Cir. 2013) ("We therefore decline to adopt the rule that Lanham Act plaintiffs must show that the defendant was using the allegedly infringing content 'as a mark' as a threshold issue in order to establish consumer confusion."). *Kelley-Brown* is controlling law.

Furthermore, *Kelley-Brown* also stands squarely for the proposition that "[b]ecause fair use is an affirmative defense, it often requires consideration of facts outside the complaint and is thus inappropriate to resolve on a motion to dismiss." *Kelley-Brown*, 717 F.3d at 308; *see also World Trade Centers Ass'n v. Port Authority of NY and NJ*, No. 15-CV-7411-LTS, 2016 WL 8292208 at *3 (December 15, 2016) (quoting *Kelley-Brown* when denying "fair use" defense as a proper basis to dismiss Lanham Act claims).

Other attorneys pressing this same argument in the motion to dismiss context in the United States District Court for the Southern District of New York since *Kelley-Brown* was decided by the Second Circuit Court of Appeals have been forced to defend themselves against potential sanctions for frivolity. *See, e.g., Edison Coatings, Inc. v. Freedom Cement, LLC, et ano.*, 2017 WL 462339 at *1 (S.D.N.Y. January 30, 2017) (Kaplan, J.) (Rule 11 sanctions evaluated *sua sponte* because "[d]efendants in this trademark infringement case moved to dismiss the amended complaint on the ground, among others, that the pleading failed to allege that defendants used the allegedly infringed mark 'as a mark.' In so doing, however, they failed to cite or otherwise refer to *Kelly-Brown v. Winfrey*, 717 F.3d 295 (2d Cir. 2013), which appeared to be flatly inconsistent with that contention."). Therefore, A-B's Letter's suggestion that Spuds Ventures has somehow failed to allege that the Defendants used the term SPUDS MACKENZIE "as a mark" has absolutely no merit.

On a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Ruotolo v. City of N.Y.*, 514 F.3d 184, 188 (2d Cir. 2008). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010).

Specifically, the AC pleads a classic, textbook case of "reverse confusion" trademark infringement. AC at ¶¶ 104-107. Reverse consumer confusion occurs precisely when more powerful companies, such as A-B and W+K, commercially exploit the trademark of a smaller, less powerful, senior user, such as Spuds Ventures, without permission. Thus, the smaller company is hampered in developing its own trademarks, as consumers will assume it is ***he*** who is the infringer, not vice versa. The legal doctrine of reverse confusion is intended to enable small, senior users to protect their trademark rights against larger companies. Id.

Whereas "forward confusion" involves the misimpression that the senior user is the source or sponsor of the junior user's products, "reverse confusion" exists where a junior user "selects a trademark that is likely to cause consumers to believe, erroneously, that the goods marketed by the [senior] user are produced by the [junior] user." *Lang v. Ret. Living Pub. Co.*, 949 F.2d 576, 583 (2d Cir. 1991); *accord Banff, Ltd. v. Federated Dep't Stores, Inc.*, 841 F.2d

4

486, 490 (2d Cir. 1988).

This reverse confusion theory in trademark law protects the mark of a prior user from being overwhelmed by a subsequent user, typically where the subsequent user is larger and better known and consumers might conclude that the senior user is the infringer." *Mejia & Assocs. Inc. v. IBM*, 920 F.Supp. 540, 546 (S.D.N.Y. 1996). In a reverse confusion case, "the consumers relevant to [this] inquiry are those who purchase [the plaintiff's] products." *Sterling Drug, Inc. v. Bayer AG,* 14 F.3d 733, 742 (2d Cir. 1994).

This Court therefore **_must_** engage in the traditional and fact-intensive eight-factor *Polaroid* test to determine if such reverse consumer confusion is likely. In *Polaroid Corp. v. Polarad Elecs. Corp.,* 287 F.2d 492, 495 (2d Cir.), *cert. denied*, 368 U.S. 820 (1961), the Second Circuit set forth eight non-exclusive factors that courts are to consider when determining whether a likelihood of confusion exists: the strength of the mark, the degree of similarity between the two marks, the proximity of the products, the likelihood that the prior owner will bridge the gap, actual confusion, the defendant's good or bad faith in adopting its own mark, the quality of defendant's product, and the sophistication of the relevant buyers. *Id*. Even this extensive catalogue does not exhaust the possibilities—the court may have to take still other variables into account. *Id*.

The decision as to infringement requires a "comprehensive analysis of all the relevant facts and circumstances." *Trustees of Columbia Univ. v. Columbia/HCA Healthcare Corp.*, 964 F. Supp. 733, 744 (S.D.N.Y. 1997), quoting *Vitarroz Corp. v. Borden, Inc.*, 644 F.2d 960, 968 (2d Cir. 1981). No single factor is dispositive, and cases may certainly arise where a factor is irrelevant to the facts at hand. But it is "incumbent upon the district judge to engage in a deliberate review of each factor, and, if a factor is inapplicable to a case, to explain why." *Id*.; *see also Arrow Fastener v. Stanley Works*, 59 F.3d 384, 400 (2d Cir. 1995). When the likelihood of confusion is in doubt in reverse confusion cases, the question will be resolved in favor of the trademark owner. *See Brockmeyer v. Hearst Corp.*, 248 F.Supp.2d 281, 293-94 (S.D.N.Y. 2003).

Here, Spuds Ventures is confident that the factfinder will ultimately agree that prospective consumers of Plaintiff's products and/or restaurant/bar services would likely be confused into erroneously believing that Spuds Ventures is an infringer, when, in fact, priority of trademark rights inured to Spuds Ventures' benefit, making it the senior owner of the trademarks at issue.[6]

Further, with respect to willfulness, it is clear that either A-B (and/or W+K) knew about Plaintiff's federally registered trademark, or they were reckless, and failed to conduct any ordinary due diligence to search for Plaintiff's trademark before creating and broadcasting their commercial. If Defendants were careless, it was certainly not due to their lack of resources. For example, A-B regularly collects over 40 billion dollars each year in gross revenue. A-B also spent millions of dollars purchasing the 90-second airtime during Super Bowl LI (51). A-B itself has sought to register and has successfully registered hundreds of federal trademarks. W+K is a sophisticated advertising agency with Fortune 500 clients.

---

[6] A-B's counsel's argument that no instances of "actual confusion" are pleaded in the AC is misplaced on two fronts. First, the legal standard is likely confusion, not actual confusion. See *Polaroid*, *infra*. Second, a complaint need not prove that such facts are already in an evidentiary record, as that is properly a matter for the exchange of fact discovery, not pleading.

By way of further background, it is also worth noting that A-B publicly announced its initial arguments to the news media, after the AC was filed in this case. A-B's initial argument to the press was apparently that that it believed it did not commit willful trademark infringement because "the Plaintiff's only trademark registration for 'Spuds MacKenzie' covers pet dietary supplements and grooming supplies…" *Who Controls Spuds MacKenzie? Dog at Center of Legal Fight*, ADAGE, March 16, 2017. No mention of "fair use," "free speech" or the First Amendment was made by A-B.

In response, Spuds Ventures brought A-B's counsel's attention to the case *Anheuser-Busch, Inc. v. VIP Products, LLC*, 4:08-cv-00358-TCM (E.D. Mo.), which Anheuser-Busch, Inc. commenced in 2008.

In that case, Anheuser-Busch, Inc. alleged the following (Dkt #1) (emphasis added):

2. ***Defendant sells dog toys*** featuring blatant infringement of numerous Anheuser-Busch trademarks, including Anheuser-Busch's federally registered and famous BUDWEISER and O'DOUL'S marks…

\* \* \*

42. Defendant's sale and offer for sale of the [dog toys] bearing imitations of the Anheuser-Busch Marks ***are likely to cause confusion and mistake as to the source or origin of the [dog toys] and to create a false impression of sponsorship, approval or endorsement of those products by Anheuser-Busch.***

43. Because the public uniquely associates the Anheuser-Busch Marks with Anheuser-Busch, Defendant's acts present a substantial likelihood of ***public confusion and deception***…

Later in that case, relying upon A-B's arguments that the defendant's continuing sale of dog toys would cause consumer confusion, the District Court entered a disputed preliminary injunction against the defendant's further sale of the accused dog toys. *See Anheuser-Busch, Inc. v. VIP Products, LLC*, 666 F. Supp.2d 974, 987 (2008). Finally, the District Court in that case found that a consumer survey introduced by A-B was credible in proving that as many as 30% of prospective consumers were confused into believing that A-B was associated with the accused dog toys. *Id*. at 983.

The apparent inconsistency between A-B's posture in that case and media statements in this case led Plaintiff to suggest to A-B's counsel that A-B may be estopped from denying that consumer confusion is likely, at least based solely on the nature of the products at issue.

### A-B's Unpleaded Affirmative Defenses

When confronted with its own prior pleadings in the *VIP Products* case in correspondence from Plaintiff's counsel, A-B has now apparently changed course, and argues that it can demonstrate on a Rule 12 motion that it possesses complete immunity from the allegations of trademark infringement and unfair competition in the AC based on several unpleaded affirmative defenses. However, under *Kelley-Brown*, such defenses are routinely denied on at the preliminary Rule 12(b)(6) stage. Such defenses do not have merit, in any event. Each unpleaded defense is discussed briefly below.

*1. First Amendment Defense*

A-B's letter appeals to the First Amendment's protection of free speech. But the First Amendment's guarantee of free speech is simply not implicated in a trademark infringement case such as this one. Professor McCarthy in his trademark treatise sums up the law accurately: "In the run-of-the-mill trademark civil infringement lawsuit, a First Amendment defense would not seem to have much, if any, impact on the question of liability." 6 J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 31:142 (5th ed. 2013) (hereinafter, "*McCarthy*"). Professor McCarthy also notes that, contrary to A-B's suggestion: "[t]here is no statutory or judge-created safe harbor or affirmative defense that can quickly or easily resolve trademark versus free speech conflicts." Id. at § 31:139.

Second, it is common sense that Defendants' broadcast of a newly-created television commercial, and their public announcement that its new advertising campaign is part of a wider brand campaign to advertise beer during the SuperBowl was an obviously intentionally **_commercial_** use of Plaintiff's federally registered SPUDS MACKENZIE trademark.

While "commercial speech" is marginally protected by the First Amendment, it receives a much lesser degree of protection. *See Florida Bar v. Went for It, Inc.*, 515 U.S. 618, 623 (1995) ("We have always been careful to distinguish commercial speech from speech at the First Amendment's core."); *see also National Elec. Mfrs. Ass'n. v. Sorrell*, 272 F.3d 104, 113 (2d Cir. 2001) (commercial speech is subject to less free speech protections than core political speech).

It is also worth noting that the *Rogers v. Grimaldi* analysis cited in A-B's Letter requires a complex and delicate balancing of competing interests, including an analysis of likely consumer confusion in light of the defendants' professed "need" to use the plaintiff's trademark. *See Rogers v. Grimaldi*, 875 F.2d 994, 998 (2d Cir. 1989) (summary judgment evaluated in light of consumer confusion survey evidence and full evidentiary record).

As Judge Kozinski has noted, "[s]o long as trademark law limits itself to its traditional role of avoiding confusion in the marketplace, there's little likelihood that free expression will be hindered." Alex Kozinski, *Trademarks Unplugged*, 68 N.Y.U. L. REV. 960, 973 (1993). Therefore, Defendants' reliance on the First Amendment to thoroughly immunize themselves from Spuds Ventures' infringement claims is also misplaced.

*2. "Fair Use" Defense*

Defendants also seeks to fully immunize themselves from Spuds Ventures' claims based on the unpleaded affirmative defense of "fair use." There are generally two kinds of affirmative "fair use" defenses in trademark law: (1) "classic fair use"; and (2) "nominative fair use." *McCarthy* at § 23:11.

In a "classic" fair use situation, a defendant has used the plaintiff's trademark to describe his own product and raises fair use as a defense to allegations that its use was nonetheless confusing to some consumers. *See KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 122 (2004). However, this defense raises intensely factual questions about consumer confusion that cannot be resolved on a Rule 12 Motion to Dismiss. *See, e.g., Tiffany Inc. v. eBay, Inc.,* 600 F.3d 93, 103 (2d Cir. 2010) (analyzing eBay's argument of classic fair use of "Tiffany" trademark only after extensive bench trial).

The second type of fair use theory, "nominative fair use" or "descriptive fair use", is an even more fact-intensive and controversial defense. The Second Circuit has held that evaluation of this affirmative defense is highly complex and equally fact-intensive. *See Kelley-Brown*, 717 F.3d at 309-314.

Regardless of the specific legal test employed to evaluate the Defendants' unpleaded affirmative defenses in this case, it is undisputed that a corporate predecessor of A-B used a bull terrier dog named Honey Tree Evil Eye to portray a character named "SPUDS MACKENZIE" in the late 1980's. As the AC details, that trademark use was phased out nearly thirty years ago, the former dog died, and A-B (and/or its predecessor) abandoned all claims to trademark registrations and claim to rights in the intervening years.

Spuds Ventures used and federally registered its SPUDS MACKENZIE trademark several years before the Infringing Television Commercial was broadcast and the Infringing Press Release distributed by Defendants. A-B's Letter mentions unidentified copyrights in archived commercials from the 1980's, but trademark rights flow from use in commerce, not from copyrights in old materials. See *McCarthy* at § 10:42 ("The two types of [intellectual property] protection are independent and do not lean on each other for support.").

Therefore, Spuds Ventures believes that it is highly unlikely that Defendants' anticipated Motion to Dismiss the AC for failure to state a claim under Rule 12(b)(6) will prevail. It is urged that all Defendants be required to answer the factual allegations in the AC, and the parties should begin to engage in the meaningful exchange of fact discovery and proceed in the ordinary course of litigation without further delays or unnecessary briefing.

We look forward to discussing this matter and the Rule 16 Case Management Plan at the Initial Conference on June 28, 2017.

Thank you, Your Honor.

> Very Truly Yours,
> The Gioconda Law Group PLLC
>
>
> Joseph C. Gioconda
> Attorney, Counselor at Law and Founder